### Shirk's Estate.

*Wills—Construction—Devise to wife during widowhood.*

Where an experienced member of the bar died without descendants while the Intestate Act of April 8, 1833, P. L. 315, was in force, and by his will gave certain real estate to his wife for life or during widowhood, and then directed that all the residue of his estate "shall descend" as though he had made no will, and the widow elects to take under the will, and then remarries, the widow on remarriage forfeits the estate devised to her, but becomes, under the Act of 1833, entitled to one-half of such real estate for life.

Petition for declaratory judgment.  O. C. Lebanon Co., July T., 1926, No. 7.

*L. Saylor Zimmerman,* for petitioners.

*Roy M. Bowman,* for Harriet C. Shirk; *Harry A. Honker,* for the estate.

HENRY, P. J.—The surviving widow (since remarried) and all the other next of kin of said Howard C. Shirk, deceased, have petitioned this court for a decree to determine the interest the surviving widow took in certain specified real estate of which the said Howard C. Shirk died seized.

By his last will and testament, the said testator, after giving to his wife absolutely all his silverware, bric-a-brac and household goods and furniture, provided as follows:

Shirk's Estate.

"Third. I give and devise to my beloved wife Matilda J. K. Shirk, for and during her natural life only, or so long as she shall remain unmarried, my house and lot of ground situate at the Southwest corner of Cumberland Street and Peach Alley in the City of Lebanon, Pennsylvania, bounded on the north by said Cumberland Street, on the east by Peach Alley, on the south by Walnut Alley and on the west by lot of John Weiss.

"Fourth. I order and direct that all the rest, residue and remainder of my estate, real and personal whatsoever and wheresoever situate, shall descend and be divided as though I had made no will."

The said testator left to survive him as next of kin his wife, the said Matilda J. K. Shirk, and two sisters, namely, Helen R. Baker and Harriet Cassidy Shirk; and the said Matilda J. K. Shirk has since been married to T. V. McGeehan.

The controversy is only respecting the real estate mentioned and described in the third clause of the will, the effect of the remarriage of the surviving wife, and her interest, if any, in said real estate under the fourth clause of the will.

In reaching a conclusion, we cannot be governed by a thought of what Howard C. Shirk might direct under existing conditions, but we can only consider the language he used in making his will and his condition and surroundings at that time, including, of course, his profession and standing as a lawyer. The said third and fourth clauses of this will are plain and unambiguous. The testator gives the house and lot of ground in question to his wife for and during her natural lifetime only or so long as she remains unmarried, and her marriage consequently ends her interest in this house and lot of ground under the third clause of the will. The fourth clause, however, is a sweeping residuary provision which shows an evident intention not to die intestate as to any portion of his property, and directs that this residuary estate shall descend and be divided as though he had no will, that is, according to the intestate laws then in force in this State. The intestate law then in force was the Act of April 8, 1833, P. L. 315, in section 1, article II, of which it is provided that "where such intestate shall leave a widow and collateral heirs or other kindred, but no issue, the widow shall be entitled to one-half part of the real estate, including the mansion-house and buildings appurtenant thereto, for the term of her life." The language of the fourth clause itself leaves no room for doubt as to what the testator intended, and this conclusion is strengthened when we consider that Howard C. Shirk was a leader at this bar, where he enjoyed a large and extensive practice, especially in the Orphans' Court. He knew the commonly accepted, as well as the technical legal meaning of the words he used and, this being so, he must be deemed to have intended that all the residue of his estate, which included the remainder interest in the house and lot in question, was to be distributed as though he had made no will, that is, to the widow who survived him and his collateral heirs, that is, his sisters, under the quoted provisions of the Intestate Act of 1833. It is strongly urged by counsel for the surviving sisters that a construction permitting the surviving wife to participate in this real estate under the fourth clause of the will is inconsistent with the language used by testator in the third clause of the will, where he gave her this real estate for life only or so long as she remained unmarried, and that her interest under the intestate law is a dower interest which she waived when she accepted the terms of the will. The answer to this is that her waiver was of her common-law dower rights and not of any rights under the will, and she is here claiming not against but under the express provisions of the will. While the provisions of the third clause very evidently

intended to restrict the surviving wife to an estate during her lifetime or until she remarried, yet there is nothing inconsistent in holding that she could still be a participant under the fourth clause of the will, for this fourth clause, under the conclusion we reach, gives her quite a different estate from that mentioned in the third clause. Under the third clause she had an estate in the whole of this property during lifetime or until she remarried. Under the fourth clause she has a life estate in only one-half of this property during her lifetime.

McGovran's Estate, 190 Pa. 375, and Everitt's Estate, 195 Pa. 450, cited by counsel, were cases in which there was express exclusion of certain heirs. The express restricted participation of certain heirs can hardly be authority for the determination of this case, where the testator might have but did not exclude any one from participation under the fourth clause of his will.

It is to be noted that the will describes the western boundary of the house and lot in question as being the lot of John Weiss, while the petition of the parties submitting this matter to the court describes the western boundary as the lot now or late of Ella Miller. The decision in this case will only affect the property as described in the said will of Howard C. Shirk, deceased.

And now, to wit, Feb. 5, 1927, it is adjudged and decreed that Matilda J. K. McGeehan is entitled to one-half part of the real estate mentioned and described in the third clause of the will of Howard C. Shirk, deceased, for the term of her life.          From Dawson W. Light, Lebanon, Pa.